UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEVILLE FULLERTON BURTON HOLDINGS, LLC<br><br>Plaintiff,<br><br>vs.<br><br>SOCAL WHEELS, INC.; MICHAEL YABLONKA; CHRISTOPHE GRANGER; JASON SIU; and DONNY MAK<br><br>Defendants. | CASE NO. 8:14-cv-1954-JLS-JCGx<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 164)** |

I.     **INTRODUCTION**

Before the Court is Plaintiff Roseville Fullerton Burton Holdings, LLC's Motion for Summary Judgment as to Defendant SoCal Wheels, Inc.'s counterclaims.  (Mot., Doc. 164.)  SoCal Wheels filed an opposition and Roseville replied.  (Opp., Doc. 185; Reply, Doc. 191.)  The Court finds this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. R. 7-15.  Accordingly, the hearing set for October 14, 2016, at 2:30 p.m., is VACATED.  Having read and considered the parties' briefs, the Court GRANTS Roseville's Motion.

II.    **BACKGROUND**

The factual background of this dispute was set forth in this Court's earlier order granting summary judgment in favor of Defendants and is incorporated into this Order by reference.  (*See* Order, Doc. 195.)  In addition to that background, the Court adds the following undisputed facts:

Quality Auto Care Centers, the first entity to use the "Discounted Wheel Warehouse" mark, was originally a brick and mortar store that Naeem Niamat started in approximately 1997 in Roseville, CA.  (SoCal SGD ¶ 13, Doc. 185-1.)  USA Wheel and Tire Outlet #2, which acquired the "Discounted Wheel Warehouse" mark from Quality Auto Care, consistently exceeded $7 million in annual gross revenue from 2005 to 2013.  (*Id.* ¶ 16.)  Christophe Granger, the President and owner of SoCal Wheels, was aware of Discounted Wheel Warehouse at least as early as 2008 and believed that Discounted Wheel Warehouse was copying the Wheel Warehouse name.  (*Id.* ¶¶ 3, 8.)  However, after purchasing Wheel Warehouse, SoCal Wheels never filed a federal trademark application to register the "Wheel Warehouse" trademark, never sent a cease and desist letter to Discounted Wheel Warehouse, and never filed an objection to Discounted Wheel Warehouse's trademark registration.  (*Id.* ¶¶ 9–10.)  SoCal Wheels also did not file suit

against Roseville to assert its claims for trademark infringement or any other harm prior to asserting its counterclaims in the instant action. (*Id.* ¶ 11.)

The instant action began on December 9, 2014, when Roseville filed a complaint against SoCal Wheels asserting, among other things, claims of trademark infringement and unfair competition. (Compl., Doc. 1.) On February 3, 2015, SoCal Wheels filed its counterclaims, (Counterclaim, Doc. 14), which were later amended to assert the following four claims: (1) trademark infringement under Section 43(a) of the Lanham Act; (2) cancellation of trademark under 15 U.S.C. §§ 1064(3) and 1064(5); (3) violation of Section 17200 of the California Business and Professions Code ("Unfair Competition Law"); and (4) declaratory relief, (Amended Counterclaim ¶¶ 31–71, Doc. 34.) Roseville now moves for summary judgment on all of SoCal Wheels' counterclaims. (Mot. at 2.)

### III. LEGAL STANDARD

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and a fact is "material" when it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. However, "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation marks omitted)). The role of the Court is not to resolve disputes of fact but to assess whether there are any factual disputes to be tried.

1  The moving party bears the initial burden of demonstrating the absence of a genuine
2  dispute of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving
3  party carries its initial burden, the adverse party 'may not rest upon the mere allegations or
4  denials of the adverse party's pleading,' but must provide affidavits or other sources of
5  evidence that 'set forth specific facts showing that there is a genuine issue for trial.'"
6  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)).
7
8  **IV.    DISCUSSION**
9      **A.    Trademark Infringement**
10  Section 43(a) of the Lanham Act prohibits the use in commerce of "any word, term,
11  name, symbol, or device, or any combination thereof, or any false designation of origin,
12  false or misleading description of fact, or false or misleading representation of fact" which
13  is likely to cause confusion, cause mistake, or deceive another. 15 U.S.C. § 1125(a). To
14  prevail on a claim of trademark infringement under Section 43(a), a party must prove: "(1)
15  it has a valid, protectable trademark, and (2) [the defendant's] use of the mark is likely to
16  cause confusion." *Southern Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014)
17  (quoting *Applied Info. Sciences Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007)
18  (internal quotation marks omitted). However, Roseville argues as a threshold matter that
19  SoCal Wheels' trademark infringement counterclaim is barred by laches. (*See* Mot. at 2.)
20  "Laches is an equitable time limitation on a party's right to bring suit" and is a valid
21  defense to Lanham Act claims. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d
22  829, 835 (9th Cir. 2002) (internal quotation marks and citation omitted). The party
23  asserting laches must show that it suffered prejudice as a result of the other party's
24  unreasonable delay in filing suit. *Id.* "While laches and the statute of limitations are
25  distinct defenses, a laches determination is made with reference to the limitations period
26  for the analogous action at law. If the [party] filed suit within the analogous limitations
27  period, the strong presumption is that laches is inapplicable." *Id.* However, if suit is filed
28

1  outside of the period, it is presumed that laches is applicable. *Id.* at 836, 838. The
2  "presumption of laches is triggered if any part of the claimed wrongful conduct occurred
3  beyond the limitations period." *Id.* at 837. The limitations period runs from the time the
4  party asserting the claim knew or should have known about its claim. *Id.* at 838. When a
5  federal statute lacks a specific statute of limitations, it is generally presumed that
6  "Congress intended to 'borrow' the limitations period from the most closely analogous
7  action under state law." *Id.* at 836. "The Lanham Act contains no explicit statute of
8  limitations." *Id.* In California, courts in the Ninth Circuit have split between applying a
9  three-year period or a four-year period. *See, e.g.*, *Karl Storz Endoscopy Am., Inc. v.*
10 *Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) (applying three-year period from
11 Section 338(d) of the Code of Civil Procedure); *Jarrow*, 304 F.3d at 838 (applying three-
12 year period from Section 338(d)); *Internet Specialties West, Inc. v. Milon-DiGiorgio*
13 *Enters., Inc.*, 559 F.3d 985, 990 n.2 (9th Cir. 2009) (applying four-year period "from
14 California trademark infringement law"); *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180,
15 1189–90 (N.D. Cal. 2015) (noting that Ninth Circuit and district courts in California have
16 "almost universally" assumed a four-year period from Sections 337 or 343 of the Code of
17 Civil Procedure, but expressing some concern over the assumption).
18       The Court concludes that under either a three-year or a four-year approach, the
19 limitations period has long since run. The mark "Discounted Wheel Warehouse" was used
20 as early as 2003 and was registered on September 9, 2008. (SGI ¶¶ 83, 153, Doc. 177-1.)
21 "Registration of a mark on the principal register . . . shall be constructive notice of the
22 registrant's claim of ownership thereof." 15 U.S.C. § 1072; *see also E-Systems, Inc. v.*
23 *Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983). Yet no claim of infringement was made
24 until 2015. Given the similarities in trade names, the proximity in location of the two
25 businesses, the fact that both sell wheels and tires, and the formal registration of the
26 "Discounted Wheel Warehouse" trademark, the Court concludes that SoCal Wheels and
27 Wheel Warehouse should have known of Discounted Wheel Warehouse's potential
28

infringing use back in 2008. Laches is therefore presumed to apply, and the Court now analyzes whether (1) SoCal Wheel's delay in asserting its infringement claim was unreasonable, and (2) Roseville would suffer prejudice from the delay if the suit were to continue. *See Jarrow*, 304 F.3d at 838.

### a. Unreasonable Delay

In determining whether the delay was unreasonable, a court must balance the following six factors: (1) the strength and value of the trademark rights asserted; (2) the plaintiff's diligence in enforcing mark; (3) the harm to the senior user if relief is denied; (4) whether there is good faith ignorance by the junior user; (5) the competition between senior and junior users; and (6) the extent of harm suffered by the junior user because of the senior user's delay. *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006).

#### i. First Factor: Strength and Value of the Trademark Rights Asserted

The first factor weighs in favor of Roseville. "The strength of a mark is determined by its placement on a 'continuum of marks from "generic," afforded no protection; through "descriptive" or "suggestive," given moderate protection; to "arbitrary" or "fanciful" awarded maximum protection.'" *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) (citation omitted). "A strong mark is inherently distinctive, for example, an arbitrary or fanciful mark." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003). "Descriptive or suggestive marks are relatively weak." *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1102 (9th Cir. 2004). The former specifically describes a "characteristic or ingredient of an article or service," while the latter "suggests, rather than describes, an ingredient, quality or characteristic." *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987). Here, SoCal Wheels' mark is descriptive or, at most, suggestive. The term "Wheel Warehouse" describes or suggests a large selection of wheels. There is nothing arbitrary or fanciful

about a wheel and tire business doing business under such a mark. SoCal Wheels' mark is therefore relatively weak, and the first factor weighs in favor of Roseville.

### ii. Second Factor: Diligence in Enforcing Mark

The second factor also weighs in favor of Roseville. As mentioned above, SoCal Wheels and Wheel Warehouse had constructive notice of the "Discounted Wheel Warehouse" trademark since at least 2008. Despite this knowledge and the similarities between Roseville's and SoCal Wheels' trade names and lines of business, there is no indication that SoCal Wheels or Wheel Warehouse tried to enforce the "Wheel Warehouse" trademark until SoCal Wheels was sued by Roseville.

SoCal Wheels seeks to explain the delay by raising the doctrine of "progressive encroachment." (Opp. at 12.) "Under this doctrine, the trademark owner need not sue in the face of *de minimis* infringement by the junior user." *Tillamook*, 465 F.3d at 1110. Instead, the owner may wait until the junior user moves into direct competition, selling the same product through the same channels, and causing actual market confusion. *Id.* "Common methods of encroachment are the junior user's expansion of its business into different regions or into different markets." *Id.* However, "[a] junior user's growth of its existing business and the concomitant increase in its use of the mark do not constitute progressive encroachment." *Id.* SoCal Wheels argues that Roseville moved into direct competition gradually from 2011 to 2015. (Opp. at 14–15.) In 2011, Wheel Warehouse carried thirty-six unique brands of wheels that were not carried by Discounted Wheel Warehouse. (*Id.* at 14.) By 2015, that number had shrunk to nine. (*Id.*) SoCal Wheels also asserts that Granger did not realize that Discounted Wheel Warehouse was a retail store until 2011 when SoCal Wheels purchased Wheel Warehouse. (*Id.* at 14–15.)

This argument is no justification for delay when the "junior user" is a wheel and tire business that was consistently exceeding $7 million in annual gross revenue. (SoCal SGD ¶ 16.) Moreover, the "Discounted Wheel Warehouse" mark has been in use since at least 2003 and has been in use in Orange County since early 2007. (SGI ¶¶ 83, 99, 258.) The

1  distinction on which SoCal Wheels relies is that at some point between 2011 and 2015,
2  Discounted Wheel Warehouse began selling more of SoCal Wheels' "exclusive" brands.
3  That distinction is indicative of growth in Roseville's business rather than expansion into a
4  different region or different market. Roseville has gone from selling wheels and tires to
5  selling a larger selection of arguably higher quality wheels and tires. This is unlike the
6  situation in *Tillamook*, where the senior user sold cheese and butter products and the junior
7  user sold jerky and smoked beef. 465 F.3d at 1105–06.

          iii.        <u>Third Factor: Harm to the SoCal Wheels if Relief Is Denied</u>

9         The third factor weighs in favor of SoCal Wheels. As described above, the two
10 marks at issue in this case are similar in sight, sound, and meaning. Both parties sell
11 wheels and tires online and through a physical retail location in Orange County. There is a
12 likelihood of confusion that will diminish the value of SoCal Wheels' trademark if relief is
13 denied.

          iv.        <u>Fourth Factor: Good Faith Ignorance by Roseville</u>

15        The fourth factor weighs in favor of Roseville. The "Discounted Wheel
16 Warehouse" mark has been in use since at least 2003. (SGI ¶ 83.) At that time, the mark
17 belonged to Quality Auto Care which was located in Roseville, CA. (*Id.* ¶¶ 83–84.) The
18 Discounted Wheel Warehouse business did not relocate to Orange County until early 2007.
19 (*Id.* ¶¶ 99, 258.) The undisputed facts do not show that the users of the "Discounted
20 Wheel Warehouse" mark knew of Wheel Warehouse earlier than 2007. Moreover, SoCal
21 Wheels fails to point to evidence that raises a genuine dispute as to whether Niamat and
22 Quality Auto Care knew of Wheel Warehouse when they first used the "Discounted Wheel
23 Warehouse" mark. All that SoCal Wheels points to is deposition testimony where Niamat
24 defers to his interviewer's suggestion that Wheel Warehouse was in business since the
25 1980s or 1990s. (Niamat Depo. 36:4–11, Doc. 159-285.) Niamat and his businesses
26 cannot have acted in bad faith if they chose their mark while unaware of Wheel
27 Warehouse's existence.

28

1    For the same reasons, SoCal Wheels' deliberate infringement argument fails here.
2 (*See* Opp. at 10–12.) It is true that willful or deliberate infringement by a defendant
3 precludes the application of laches as a defense. *See Danjaq LLC v. Sony Corp.*, 263 F.3d
4 942, 956–57 (9th Cir. 2001). However, infringement cannot have been willful or
5 deliberate where the defendant was unaware of a mark's existence.

     v. <u>Fifth Factor: Competition Between Senior and Junior Users</u>

   The fifth factor weighs in favor of SoCal Wheels. Both companies sell wheels and tires online and through a physical location in Orange County and have been doing so for several years. Given the high level of competition between the parties, this factor weighs against the application of laches. *See Grupo Gigante*, 391 F.3d at 1105.

     vi. <u>Sixth Factor: Extent of Harm Suffered by Roseville Because of SoCal Wheels' Delay</u>

   Finally, the sixth factor weighs in favor of Roseville. As mentioned above, courts in the Ninth Circuit have applied either a three-year or four-year limitations period to an assertion of laches against Lanham Act claims. Here, it took SoCal Wheels approximately seven years after learning of "Discounted Wheel Warehouse" to raise any claims of trademark infringement. Moreover, SoCal Wheels and Wheel Warehouse never sought to affirmatively assert any claims of infringement; the instant claims were raised as counterclaims to a suit brought against SoCal Wheels for trademark infringement. The passage of time works to prejudice Roseville by eroding available evidence and lulling the company into investing time, money, and effort into building its mark's value in reliance on SoCal Wheels' inaction.

   In light of the presumption that laches applies, and considering four of the six factors weigh in Roseville's favor, the Court concludes that SoCal Wheels' delay was unreasonable.

### b. *Prejudice*

Courts have recognized two chief forms of prejudice in the laches context: evidentiary prejudice and expectations-based prejudice. *Danjaq LLC*, 263 F.3d at 955. "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." *Id.* Expectations-based prejudice arises when a defendant "took actions or suffered consequences that it would not have had the plaintiff promptly brought suit." *Id.* Here, Roseville asserts only expectations-based prejudice. (*See* Mem. at 15–16.)

Roseville asserts that it expended "considerable time, money and effort, as well as devoted substantial resources to advertise and promote the 'Discounted Wheel Warehouse' mark and the services offered under the mark." (Mem. at 15.) Roseville claims that "[i]f SoCal and/or its predecessor had filed suit sooner, Roseville Fullerton could have invested its resources in shaping an alternative identity for its business in the minds of the public." (*Id.* at 16.) The "Discounted Wheel Warehouse" mark was published on the principal register on June 24, 2008, about two months before the mark became registered on September 9, 2008. (SGI ¶ 153.) "Registration of a mark on the principal register . . . shall be constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1072; *see also E-Systems*, 720 F.2d at 607. Had Wheel Warehouse sued or otherwise tried to assert its trademark rights back in 2008, then Roseville could have litigated this issue before it invested several years' worth of time, money, and effort in shaping its business around its trademark, or it could have terminated the registration process altogether and gone a different route with its business. Instead, Wheel Warehouse and SoCal Wheels did nothing, and Roseville acted in reliance on that inaction to its prejudice.

In light of the presumption that laches applies, and the Court's determination that Roseville has suffered prejudice from SoCal Wheels' unreasonable delay in bringing suit, the Court concludes that laches bars SoCal Wheels' claim of trademark infringement under the Lanham Act. Therefore, the Court GRANTS Roseville's Motion as to this claim.

### B. <u>Cancellation of Trademark</u>

Roseville asserts laches for SoCal Wheels' cancellation claim as well. (*See* Mot. at 2.) However, a petition to cancel a trademark registration may be filed "[a]t any time if the registered mark . . . was obtained fraudulently." 15 U.S.C. § 1064(3). SoCal Wheels' cancellation claim is based on assertions that Roseville made fraudulent statements to the U.S. Patent and Trademark Office ("USPTO") to register its trademark. (*See* Opp. at 23–25.) Therefore, the Court concludes that laches does not bar SoCal Wheels' cancellation of trademark counterclaim.

A party may seek cancellation of a trademark by proving "a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) (citation omitted). The burden of proving that a party fraudulently procured a trademark registration is heavy, *id.*, and must be shown by "clear and convincing evidence," *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 778 F. Supp. 2d 1052, 1061 (C.D. Cal. 2011) (citing *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009)). The "falsity and intent prongs are separate, 'so absent the requisite intent to mislead the USPTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation.'" *Id.* (quoting *In re Bose*, 580 F.3d at 1243). "[D]eception must be willful to constitute fraud," and "[m]ere negligence is not sufficient to infer fraud or dishonesty." *Id.* (quoting *In re Bose*, 580 F.3d at 1243–44) (internal quotation marks omitted). "While intent to deceive may be inferred from circumstantial evidence, such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *Id.* (quoting *In re Bose*, 580 F.3d at 1245) (internal quotation marks omitted).

In support of its cancellation claim, SoCal Wheels points to the following undisputed facts: (1) the statement made by USA Wheel and Tire Outlet #2's legal counsel

to the USPTO on July 12, 2006, that "to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto . . .," (SGI ¶ 131); and (2) statements made to the USPTO that USA Wheel and Tire Outlet #2 expended "over $250,000 of their marketing budget to obtain a 'first-result' position" in Google, (SGI ¶ 135.) However, even viewing all evidence in SoCal Wheels' favor, there is insufficient evidence from which a jury could reasonably conclude that Niamat and USA Wheel and Tire Outlet #2 acted with fraudulent intent. Even if Niamat and USA Wheel and Tire Outlet #2 were aware of Wheel Warehouse's existence in 2006, this does not make their legal counsel's statement to the USPTO intentionally fraudulent or even false. *See Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006) ("In the face of [the trademark registrant]'s attestation, mere knowledge of the existence of [a similar] mark does not constitute fraud."); *Neurovision Med. Prods. Inc. v. NuVasive, Inc.*, 494 Fed. Appx. 749, 751 (9th Cir. 2012) ("[A]n applicant must disclose only those prior users that the applicant believes have acquired superior rights to the mark in the classification for which registration is sought."). Other than evidence that Niamat might have been aware of Wheel Warehouse prior to 2006, SoCal Wheels offers nothing to support fraudulent intent with respect to the first statement.

As to the second statement, SoCal Wheels argues that the $250,000 "marketing budget" was actually the salaries of Niamat and Dean Riley and not independent marketing expenditures. (*See* Opp. at 25.) Even assuming this is true, SoCal Wheels has failed to point to evidence that the USPTO relied on this representation in granting trademark registration. The statement about the $250,000 marketing budget was made on April 24, 2007. (SGI ¶ 135.) The USPTO then denied USA Wheel and Tire Outlet #2's trademark registration application on June 11, 2007. (*Id.* ¶ 144.) It took additional effort by Niamat and USA Wheel and Tire Outlet #2 before the USPTO finally granted registration in 2008. (*See id.* ¶¶ 145–50, 152–53.) While USA Wheel and Tire Outlet #2 again represented that

12

it spent "over a quarter-million dollars" in advertising and marketing, it also made other representations to the USPTO in support of its application. (*Id.* ¶¶ 145–47.) SoCal Wheels has failed to point to any evidence indicating that it was the marketing expenditures on which the USPTO relied in granting registration rather than these other factors. Moreover, an inference that the USPTO did so is not reasonable in light of its previous rejection of USA Wheel and Tire Outlet #2's application with the same information.

Accordingly, the Court concludes that SoCal Wheels' cancellation of trademark claim fails as a matter of law and GRANTS Roseville's Motion as to that claim.

### C. <u>Unfair Competition Law</u>

Section 17200 of the California Business and Professions Code prohibits unfair competition, including any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. An unlawful business activity includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Blank v. Kirwan*, 39 Cal. 3d 311, 329 (1985) (internal quotation marks and citation omitted). Here, SoCal Wheels' unfair competition claim arises out of the same conduct that motivates its claim of trademark infringement, and SoCal Wheels does not indicate otherwise in its Opposition. In light of the Court's decision granting Roseville's Motion on SoCal Wheels' trademark infringement claim, the Court GRANTS Roseville's Motion as to SoCal Wheels' unfair competition claim.

### D. <u>Declaratory Relief</u>

The Declaratory Judgment Act provides that, in a case of actual controversy within its jurisdiction, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Like with SoCal Wheels' unfair competition claim, SoCal

Wheels' claim for declaratory relief arises wholly out of its claim for trademark infringement.  Therefore, the Court GRANTS Roseville's Motion as to this claim.

## V. CONCLUSION

For the reasons stated above, the Court GRANTS Roseville's Motion for Summary Judgment.

DATED: October 11, 2016

_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE